# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PEUANG BOUNNHONG, | ) | 1:05cv0004 AWI JMD |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## BACKGROUND

Plaintiff Peuang Bounnhong ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable John M. Dixon, Jr., United States Magistrate Judge, for findings and recommendation to the District Court.

# **FACTS AND PRIOR PROCEEDINGS**[1]

In March 2000, Plaintiff filed a previous application for disability insurance and SSI benefits. AR 62. She was found not disabled through February 14, 2002. AR 59-68. Plaintiff filed her most recent application for disability insurance and SSI benefits on November 21, 2002. AR 87. She alleged disability since February 15, 2002, due to depression, anxiety, emotional problems, hand surgery and numbness. AR 87, 96. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 72-75, 77-81, 82. On January 14, 2004, ALJ Burt Hoffman Jr. held a hearing. AR 26-58. ALJ Hoffman denied benefits on April 14, 2004. AR 13-19. On October 29, 2004, the Appeals Council denied review. AR 5-8.

Hearing Testimony

On January 14, 2004, ALJ Hoffman held a hearing in Fresno, California. AR 26. Plaintiff appeared with her attorney, Gina Fazio. AR 28. Plaintiff's daughter, Thim Bounnhong, also appeared and testified. AR 41-57. A Laotian interpreter assisted at the hearing. AR 28, 30.

Plaintiff was born on July 16, 1948. AR 31. She has four children. AR 31. She lives with her children and her husband. AR 31. Her husband currently is not working and has not worked in many years. AR 31-32.

Plaintiff testified she worked in a warehouse at a farm with strawberry fruit. AR 33. She worked making something "to change the water." AR 33. She was laid off because she cannot speak English. AR 34. She has a heart problem that keeps her from working. AR 34. When she was working, she cut her hand beneath her right thumb. AR 34-35. She had an operation on her right thumb. AR 36. She testified it is okay but numb. AR 36.

Plaintiff does not drive. AR 36. She is not a citizen. AR 36. She cannot read. AR 38.

Plaintiff testified she did not have thyroid surgery and her doctor only prescribed medication for her. AR 36. She also testified her doctor performed an operation on her neck and gave her medication, which she needs to take her "whole life." AR 36-37. She said the

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

medication helps her thyroid. AR 35, 37. When she first started taking the medication, it was making her dizzy and she could not "remember [her]self." AR 37. Her medication is adjusted now and not causing her a problem. AR 35, 37. It helps her "getting better" and "making [her] breathe okay." AR 35, 37. Her doctor told her that every two months she has to "go check up." AR 37.

Plaintiff testified she never goes to the store. AR 37. She also testified she sometimes accompanies her children to the market. AR 38. She sometimes cooks rice and vegetables for her husband. AR 38-39. She cooks half and her husband helps. AR 38-39.

In response to questions about her heart, Plaintiff testified that if she hears some sound, her heart keeps "beating, beating and beating" and sometimes she cannot breathe. AR 37, 39. She cannot remember how often she has difficulty breathing. AR 39. She testified that about three years ago her heart "kept beating, beating" and her son-in-law tried to help her. AR 39-40. It has been three years since her last heart problem. AR 40.

Plaintiff's daughter, Thim Bounnhong, also testified. AR 41. Ms. Bounnhong is a teacher. AR 42. Plaintiff lives with Ms. Bounnhong and Ms. Bounnhong's husband, father and brother. AR 41.

Ms. Bounnhong testified about Plaintiff. AR 44. She said after "9/11" jets would fly over the house and scare Plaintiff. AR 44. Plaintiff would tell her to run for cover or to go under a tree or a bush "because they're going to bomb." AR 44. Ms. Bounnhong also testified Plaintiff had a lot of episodes when her heartbeat would race up and she would run out of breath. AR 44-45. Plaintiff's family would call an ambulance. AR 45. Ms. Bounnhong could not remember the last time Plaintiff had such a problem. AR 45. She described Plaintiff as "kind of aware of her body right now." AR 45. When Plaintiff feels it coming, Ms. Bounnhong, her neighbor, her dad, her brother and her husband massage Plaintiff's head, back and legs, especially her thigh, to make Plaintiff feel better. AR 45.

Ms. Bounnhong further testified that three years ago Plaintiff was hospitalized. AR 46. Ms. Bounnhong's neighbor told her Plaintiff's face and body were swollen, she was out of breath, and "passed out or something." AR 46.

1    Ms. Bounnhong said Plaintiff's thyroid problems were discovered in 1997. AR 46.
2 Plaintiff had an iodine laser procedure to shrink it in 2001. AR 46. Plaintiff's thyroid is not
3 functional. AR 47. She is on thyroid therapy. AR 47. Ms. Bounnhong did not think the thyroid
4 medication was working for Plaintiff because Plaintiff's thyroid was hyper and, after the iodine,
5 it became hypo and Plaintiff gained weight. AR 47-48.

6    Ms. Bounnhong also felt Plaintiff's medicine was not working because of the episode
7 Plaintiff had. AR 48. Ms. Bounnhong described Plaintiff's episodes or attacks. AR 48.
8 According to Ms. Bounnhong, Plaintiff would go into shock, her heart rate would race up high,
9 she could not breathe, and her hand and feet would get cold. AR 48. If Plaintiff did not receive
10 help in time, Plaintiff's family would have to get an ambulance to revive her and give her a shot
11 to help her breathe. AR 48. An attack or an episode can come any time. AR 48. Ms.
12 Bounnhong testified that Plaintiff is always stressed and depressed, and they do not know the
13 difference if she's feeling a panic attack or an episode. AR 49. She worries Plaintiff might pass
14 out or die from the episode. AR 49. At least two persons are needed to revive Plaintiff by
15 massaging her thigh, back, neck and head. AR 50.

16    Plaintiff is assisted at home because she almost burned Ms. Bounnhong's house down.
17 AR 50. Plaintiff has flooded Ms. Bounnhong's home many times because she is forgetful. AR
18 50. Plaintiff has left the stove on and has burned pots and pans. She has broken dishes, plates
19 and glasses. AR 50.

20    Ms. Bounnhong testified Plaintiff had a job in the late 80's and early 90's. AR 51.
21 Plaintiff worked until 1996. AR 51. In the early 80's, Plaintiff seasonally picked strawberries.
22 AR 52. She was an assembly worker making "sprinkler type" for irrigation. AR 51. She did
23 physical work where she had to push with her thumbs and hand. AR 50-51. Ms. Bounnhong
24 said Plaintiff had carpal tunnel and trigger finger surgery. AR 52. Ms. Bounnhong reported the
25 surgery went fine, but then Plaintiff did not feel "good." AR 52. Plaintiff still has symptoms,
26 making her weak from her hand to her elbow. AR 52.

1   Plaintiff arrived in Fresno in 1979. AR 52. She does not travel much. AR 52. Ms.
2 Bounnhong and her father would take Plaintiff to and from work. AR 53. Plaintiff is afraid to
3 drive. AR 53.
4   Ms. Bounnhong does not go with Plaintiff to the doctor. AR 53. Ms. Bounnhong
5 testified Plaintiff receives medication for her pain and for her thyroid. AR 53. Plaintiff also has
6 some depression drugs, which she got from a doctor at Community Hospital and some clinic.
7 AR 53. Plaintiff faithfully takes her medication because Ms. Bounnhong's father gives it to her
8 and marks it on the calendar. AR 53-54. Plaintiff does not receive other treatment, therapy or
9 counseling for her depression. AR 54.
10   Plaintiff has a fourth grade education level. AR 54. She talks a lot about her dreams.
11 AR 54. She has flashbacks about the bombing. AR 54.
12   Ms. Bounnhong testified that Plaintiff wakes up early in the morning. AR 54-55. Ms
13 Bounnhong thought Plaintiff slept about two or three hours, maybe four at the most. AR 55. For
14 exercise, Plaintiff just walks back and forth and in the backyard. AR 55.
15   Ms. Bounnhong's sister has a daughter, which is Plaintiff's granddaughter. AR 55.
16 Plaintiff does not enjoy the noise when her grandchild cries. AR 55. When her grandchild was a
17 baby, Plaintiff went into shock one time because the baby was crying too much and too loud. AR
18 56.
19   Ms. Bounnhong testified she moved to Seattle in 2001. AR 56. She returned here
20 because her sister could not care for both the baby and the Plaintiff because Plaintiff would "have
21 that shock." AR 56-57.
22   Medical Evidence
23   On February 17, 1998, Plaintiff sought treatment from A. Michael Imobersteg, M.D., for
24 complaints of bilateral triggering of her thumbs. AR 154. Through an interpreter, Plaintiff
25 reported she worked on an assembly line, assembling irrigation tools, and had been getting
26 increasing pain in both thumbs. AR 154. Dr. Imobersteg recommended bilateral trigger thumb
27 releases. AR 154. He anticipated Plaintiff would be out of work for approximately one month.
28 AR 154.

1     On March 13, 1998, Dr. Imobersteg performed a surgical release of Plaintiff's right
2  trigger thumb. AR 153.
3     On March 19, 1998, Dr. Imobersteg reported Plaintiff was doing very well. He instructed
4  her to begin range of motion exercises. AR 152.
5     On March 26, 1998, Plaintiff again saw Dr. Imobersteg. She was wearing a sling and
6  complained of pain in her right thumb. Dr. Imobersteg took the sling away and threw it out. AR
7  152. He opined that Plaintiff was not progressing satisfactorily. He felt Plaintiff was "more than
8  likely sitting at home and not attempting to move her hand whatsoever." AR 152. He ordered
9  very aggressive physical therapy for range of motion exercises. Plaintiff could not return to
10 work due to continued discomfort. AR 152.
11    On March 30, 1998, on referral from Dr. Imobersteg, certified hand therapist Lucy Jacob,
12 OTR, from Nova Care, evaluated Plaintiff and established an occupational therapy plan of care
13 following Plaintiff's trigger thumb release surgery. AR 145-148. Therapist Jacob assessed
14 Plaintiff with significant problems in strength and range of motion. AR 145-148. She opined
15 that Plaintiff's rehab potential and prognosis was good to fair. AR 148. She recommended
16 Plaintiff be seen for home program, kinetic activity, therapeutic exercise, retrograde massage,
17 joint mobilization, soft tissue mobilization, myofascial release, use of compressive garments,
18 graded functional use, activity modification and thermal modalities. AR 148.
19    On April 6, 1998, Therapist Jacob reviewed Plaintiff's progress following trigger thumb
20 release surgery. AR 141-144. Therapist Jacob noted Plaintiff had moderate restrictions in
21 activities of daily living and moderate to severe work restrictions. AR 141. The therapist also
22 opined that Plaintiff had made good range of motion gains in all of her digits and good gains in
23 all goal areas, including sensation and appearance. AR 142, 144. Therapist Jacob recommended
24 continued aggressive therapy but with decreased sessions. AR 144.
25    On April 9, 1998, Plaintiff visited Dr. Imobersteg accompanied by an interpreter. Dr.
26 Imobersteg recommended that Plaintiff continue with physical therapy and remain out of work.
27 He anticipated Plaintiff would be able to return to work in approximately two to three weeks.
28 AR 152.

1   On April 23, 1998, Dr. Imobersteg examined Plaintiff's incision following surgical
2 release of her right upper thumb. Plaintiff demonstrated full range of motion. AR 151. Dr.
3 Imobersteg opined Plaintiff was able and capable of returning to her usual and customary job,
4 with essentially no restrictions. AR 151.
5   On May 28, 1998, Dr. Imobersteg evaluated Plaintiff's right thumb and her continuing
6 complaints of discomfort in her right upper extremity. He opined the discomfort appeared to be
7 in the trapezial muscle of Plaintiff's right shoulder and down into her right upper arm and right
8 forearm. AR 149. Plaintiff also complained of some discomfort in her right thumb. AR 149.
9 Dr. Imobersteg opined he could not detect "any significant ongoing problems regarding her right
10 thumb." AR 149. He recommended rehabilitation by a physiatrist. AR 150.
11   On March 15, 2000, Winthrop Ware, M.D., diagnosed Plaintiff with "P.T.S.D." and
12 prescribed Pamelor. AR 155. Plaintiff complained of nightly nightmares, ghosts, anger,
13 throwing things, forgetting water when cooking, headaches and back aches. AR 155. Dr. Ware
14 noted Plaintiff's affect as mobile and described her mood as "anger, sad, afraid." AR 155-156.
15   On May 7, 2000, Plaintiff sought treatment from Dr. Ware for complaints of nightmares
16 and "ghosts." Dr. Ware prescribed Pamelor. AR 155. Between September 20, 2000, and May 1,
17 2003, Plaintiff again sought treatment from Dr. Ware on eleven separate occasions for
18 complaints of nightly nightmares. AR 140, 155-156. Dr. Ware noted Plaintiff screams as she
19 goes with ghosts. AR 140, 155. He continued to prescribe Pamelor. AR 155.
20   On November 6, 2002, Plaintiff sought follow-up treatment for hypothyroid at University
21 Medical Center. AR 157-158. Plaintiff complained of fatigue and back pain. She was taking
22 synthroid. AR 157. The provider assessed hypothyroid and reduced Plaintiff's synthroid dosage.
23 AR 157.
24   On January 23, 2003, Plaintiff sought treatment at University Medical Center for her
25 thyroid. The provider assessed "Hypothyroid 2°thyroid ablation" and noted it was still over-
26 replaced. Plaintiff's prescription of Levoxyl was adjusted. AR 208.
27   On February 8, 2003, Ekram Michiel, M.D., a board certified psychiatrist, completed a
28 psychiatric evaluation of Plaintiff at the request of the Department of Social Services, Disability

7

Evaluation Division. AR 159-162. Dr. Michiel utilized a certified interpreter to assist with the interview of Plaintiff. AR 159. Plaintiff reported she was sad and could not sleep at night because of bad dreams. She also reported a lack of energy, a short temper, crying for no reason and an inability to concentrate. AR 159. She listed her medications as Levoxyl, Zoloft and Nortriptyline. AR 160. Plaintiff reported she could shop, cook, take care of personal hygiene and perform household chores. AR 160.

Dr. Michiel completed a mental status examination. AR 160. He found Plaintiff coherent and logical, with a depressed mood and restricted affect. AR 160-161. Dr. Mikiel diagnosed Plaintiff with depressive disorder not otherwise specified. He identified her global assessment of functioning to be 55-60. AR 161. Based on the evaluation, Dr. Mikiel opined Plaintiff could maintain adequate attention and concentration and carry out one or two step simple job instructions. She could relate and interact appropriately with coworkers, supervisors, and the general public. AR 161. She could not carry out an extensive variety of technical and/or complex instructions. AR 161. She also could not handle her funds because of unfamiliarity with United States currency. AR 161.

On February 11, 2003, Edward R. Mosley, M.D., an internist, completed an internal medicine evaluation of Plaintiff at the request of the Department of Social Services, Disability Evaluation Division. AR 163-167. Dr. Mosley utilized a certified interpreter for the examination. Plaintiff complained to Dr. Mosley of headaches and back pain. AR 163. Dr. Mosley noted no tenderness to palpation in the midline or paraspinal areas of Plaintiff's back. She had no muscle spasm and muscle tone appeared to be equal throughout. AR 165. He diagnosed headaches, probably tension, and back pain without evidence of sciatic involvement. Dr. Mosley commented "[t]here are no objective findings on which to base restriction of this patient's physical activities." AR 167.

On March 3, 2003, state agency physician James B. Peery, M.D., reviewed Plaintiff's medical history and agreed with the determination that Plaintiff did not have a severe impairment. AR 174-175.

On March 13, 2003, Archimedes Garcia, M.D., completed a Psychiatric Review Technique form. He opined Plaintiff had an affective disorder, but no severe impairment. AR 168, 171-173. He further opined Dr. Michiel's opinion was not given weight as the findings were consistent with the previous evidence. AR 172. State agency physician Glenn Ikawa, M.D., reviewed and affirmed Dr. Garcia's assessment of Plaintiff. AR 168.

On March 13, 2003, Plaintiff was transported by ambulance to University Medical Center complaining of general weakness/malaise, dizziness, and chest pain. AR 194-195. Plaintiff's chest X-rays were negative. AR 191.

On March 18, 2003, Plaintiff sought follow-up treatment for her thyroid at University Medical Center. The provider adjusted Plaintiff's hypothyroid medication, Levoxyl, to a lower dosage. AR 187-188.

On April 29, 2003, state agency physician Sadda Reddy, M.D., reviewed Plaintiff's medical history, alleged and discovered impairments, and functional information. Dr. Reddy determined that Plaintiff's physical and psychological condition were nonsevere. AR 169-170. Dr. Ikawa agreed with the determination. AR 169.

On May 21, 2003, Plaintiff received follow-up at University Medical Center for her hypothyroid. Plaintiff reported she felt well. Her synthroid medication was continued. AR 183-184.

On August 27, 2003, Plaintiff sought follow-up treatment at University Medical Center for her hypothyroid, complaining of occasional indigestion and stomach pain. The provider assessed "Hypothyroid 2° Graves" and renewed Plaintiff's Levoxyl prescription and Tylenol. The provider also prescribed Maalox tabs. AR 178-179.

<u>ALJ's Findings</u>

The ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 18. The ALJ also found that Plaintiff had the medically determinable impairments of hypothyroidism, controlled, and status post trigger finger release, recovered. AR 18. The ALJ further concluded Plaintiff did not have any impairment or impairments that significantly limited her ability to perform basic work-related activities. AR 19.

1  Therefore, the ALJ concluded Plaintiff did not have a "severe" impairment and was not under a
2  "disability."  AR 19.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the correct legal standards, and if the Commissioner's findings are supported by substantial evidence.  See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(g), 416.920 (a)-(g) (2004). Applying the evaluation process in this case, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset of disability; and (2) did not have an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 C.F.R. §§ 404.1520(c), 416.920(c) (2004).

Plaintiff contends that (1) the decision is not supported by substantial evidence and (2) the ALJ failed to apply the correct legal standards.

## DISCUSSION

A.   Substantial Evidence

Plaintiff alleges the ALJ failed to sufficiently analyze the evidence to support his findings that Plaintiff did not have a severe impairment. Specifically, Plaintiff argues (1) the ALJ made a mistake of fact when he found no "changed circumstances" considering Plaintiff's age; (2) the ALJ failed to review the impairments individually and in combination; and (3) the ALJ failed to consider the medical evidence of a severe impairment.

1.   Changed Circumstances

Plaintiff contends the ALJ committed a mistake of fact by finding no "changed circumstances" due to her age. To support her contention, Plaintiff cites the decision of *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.), wherein the Ninth Circuit found that the attainment of "advanced age" constituted a changed circumstance precluding the application of res judicata to a prior ALJ's ultimate finding of nondisability.

The principles of res judicata apply to administrative proceedings. *Lyle v. Sec. Health & Human Serv.*, 700 F.2d 566, 568, n. 2 (9th Cir. 1983). A previous finding that a claimant is not disabled creates a presumption of continuing nondisability. *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of nondisability creates "a presumption that [the claimant] continued to be able to work after that date." *Id.* The presumption does not apply if the claimant proves "changed circumstances" indicating a greater disability. *Chavez*, 844 F.2d at 693. To

show changed circumstances, a claimant is not required to demonstrate her medical or psychiatric condition has worsened. *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). Other changes, such as a change in the claimant's age category, constitute a changed circumstance that precludes the application of res judicata. *Id.* (citing *Chavez*, 81 F.2d at 693).

Here, there is one factor that would prevent the application of res judicata to the period after February 14, 2002. The claimant turned 55 during the review process and prior to the hearing in this matter. This change would affect the application of the Medical-Vocational Guidelines and consideration of vocational factors at Step 5 of the sequential evaluation process. 20 C.F.R. § 404.1563. In sum, the age categories are applied when making a finding about a claimant's ability to perform other work. 20 C.F.R. § 404.1520(g)(1) (2004).

Although the ALJ did not make a determination of "changed circumstances" due to Plaintiff's advanced age, this error, if any, was harmless. *Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding an error harmless where it did not negate the validity of the ALJ's ultimate conclusion). The ALJ considered the current medical evidence presented by Plaintiff, including her right trigger finger release, her mental status, her headaches and back pain, hypothyroidism, depression and fatigue. AR 17-18. Thereafter, the ALJ determined that the current mental and physical assessments were consistent with those considered in the prior decision. AR 18. He then independently found Plaintiff to have medically determinable impairments. AR 18. The ALJ concluded these impairments were not severe at Step 2. AR 18-19. In finding these impairments not severe, he relied on the examining physicians' conclusions that Plaintiff was capable of working. He also considered Plaintiff's requirement of minimal treatment. AR 18. He did not reach Step 5 in the sequential evaluation process. Accordingly, Plaintiff's advanced age would not have changed the ALJ's ultimate conclusion that Plaintiff's impairments were non-severe.

2. Severity of Impairments

Plaintiff also contends the ALJ failed to review the medical evidence demonstrating severe impairments. Plaintiff bears the burden of proving that she is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); 20 C.F.R. § 404.1512. A person is disabled if her

impairments are severe and meet the durational requirement of twelve months. 20 C.F.R. §§ 404.1505, 404.1520. A severe impairment is one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c) (2004). Examples of basic work activities include carrying out simple instructions, responding appropriately to usual work situations, dealing with changes in a routine work setting, and performing ordinary physical functions like walking and sitting. 20 C.F.R. § 404.1521(b) (2004).

An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at Step 2 if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). SSR 85-28. In determining whether an impairment or combination of impairments is "severe," an ALJ should carefully examine the medical findings that describe the impairments and make an "informed judgment" about the limitations and restrictions the impairment and related symptoms impose on the person's physical and mental ability to do basic work activities. SSR 96-3p.

Here, Plaintiff initially contends that the ALJ failed to sufficiently analyze the evidence because he supplied less than one page of rationale to support his findings at Step 2 of the sequential evaluation process. This contention is without merit. An ALJ is not required to discuss all evidence presented. Vincent v. Heckler, 739 F.2d 1393, 1394-1395 (9th Cir. 1984).

Next, Plaintiff argues the ALJ failed to review all of Plaintiff's impairments individually and in combination. Plaintiff correctly states that when a claimant suffers from multiple impairments, their combined effect must be considered without regard to whether any such impairment, if considered separately, would be of sufficient medical severity, in determining whether the claimant is disabled. Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir.1988); Sprague v. Bowen, 812 F.2d 1226, 1231 (9th Cir. 1987). In his decision, the ALJ found Plaintiff had the following medically determinable impairments: hypothyroidism, controlled; and status post trigger finger release, recovered. AR 18. Contrary to Plaintiff's contentions, the ALJ reviewed

Plaintiff's claims of Graves with hypothyroidism and her status following trigger finger release surgery. AR 18. He noted Plaintiff's treating physician had released her to work on April 23, 1998, following right trigger thumb release surgery. AR 18. Additionally, the ALJ considered the results of the consultive psychiatric examiner and the state agency physicians related to Plaintiff's mental status and depression. AR 18. He reviewed the results of the consultive medical examiner related to Plaintiff's headaches and back pain. AR 18. The ALJ credited the consultive medical examiner's findings and conclusion that there were "no objective findings on which to base restriction of [Plaintiff's] physical activities." AR. 18. The ALJ also considered Plaintiff's fatigue, which was noted to be resolved. AR 18.

Insofar as Plaintiff alleges her asserted physical issues establish a disability, these allegations are unsupported by the record. Plaintiff cites numerous diagnoses, including a combination of low back pain, right upper extremity tenderness secondary to Plaintiff's release surgery, and Graves disease with hypothyroidism. The mere diagnosis of an impairment is not sufficient to sustain a finding of disability. *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

In connection with low back pain, Plaintiff cites a University Medical Center progress record documenting her complaint of back pain and contends the ALJ should have developed the record through X-rays. AR 157. An ALJ has a duty to fully and fairly develop the record only when the evidence is ambiguous or "the record inadequate" to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The record was neither ambiguous nor inadequate regarding Plaintiff's back pain. Consultive physical examiner Dr. Mosley provided independent information regarding Plaintiff's back pain. AR 163-167. Dr. Mosley found no tenderness to palpation in the midline or paraspinal areas. He also noted no muscle spasm and muscle tone appeared to be equal throughout. AR 165. Plaintiff's range of motion in her back was within normal limits. AR 166. Dr. Mosley expressly opined that "[t]here are no objective findings on which to base restriction of [Plaintiff's] physical activities." AR 167.

With regard to right upper extremity tenderness, Plaintiff cites a May 28, 1998 report from her orthopaedic surgeon and argues that her occupational therapy reports confirm ongoing

problems with her right extremity. AR 141-148.  In May 1998, Plaintiff's orthopaedic surgeon, Dr. Imobersteg, noted "mild palpable tenderness in a generalized fashion through her scapular region as well as down into her right shoulder and right upper extremity." AR 149.   He referred Plaintiff to a physiatrist for rehabilitation of her upper right extremity. AR 149-150. There is no indication in the record that Plaintiff sought such treatment for her right upper extremity.  The ALJ concluded that Plaintiff's requirement of minimal treatment was inconsistent with any severe impairment.  AR 18.

The occupational therapy reports cited by Plaintiff  relate to her therapy following right trigger thumb release surgery.  These reports were completed on March 30, 1998 and April 6, 1998. AR 141-144, 145-148. Following this therapy, Plaintiff's treating physician, Dr. Imobersteg, released Plaintiff to return to work on April 23, 1998.  AR 151.  He opined that Plaintiff did not have any permanent ratable residuals from her injury and surgery.  AR 151.

In relation to Plaintiff's Graves disease with hypothyroidism, Plaintiff cites a follow-up assessment at University Medical Center in August 2003 wherein she complained of occasional indigestion and stomach pain. AR 178.  Plaintiff's medications were renewed. AR 178. The record contains no indication that Plaintiff received additional treatment for her hypothyroid or that her hypothyroid diagnosis limited her ability to perform basic work activities.  20 C.F.R. § 404.1520(c); *Key*, 754 F.2d at 1549.

Plaintiff also alleges the ALJ wrongly denied substantial evidence of a severe pathology. Specifically, Plaintiff contends Dr. Mickiel's report affirms a severe mental impairment.  This contention is without merit.  To be severe, an impairment must significantly limit the Plaintiff's physical or mental ability to perform basic work activities, such as carrying out simple instructions and responding appropriately to usual work situations.  20 C.F.R. §§ 404.1520(c), 404.1521(b) (2004).  Dr. Mikiel diagnosed Plaintiff with a depressive disorder not otherwise specified and identified Plaintiff's global assessment of functioning ("GAF") to be 55-60.  AR 161.  The GAF is measured on a scale of 0-100, with a higher number associated with higher functioning. A GAF score of 55-60 comports with moderate difficulty in social, occupational or school functioning, such as few friends or conflicts with peers or co-workers.  *Diagnostic and*

*Statistical Manual of Mental Disorders* 32 (4th ed. 1994). Dr. Mikiel did not opine that Plaintiff's depression limited her mental ability to perform basic work or occupational activities. Rather, he opined that Plaintiff was able to maintain adequate attention and concentration and carry out simple one or two step job instructions. AR 161. He further opined Plaintiff could relate and interact appropriately with co-workers, supervisors and the general public. AR 161.

Plaintiff also refers to the treatment records of Dr. Ware to establish the severity of her mental impairment. A mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908. Symptoms are a claimant's own description of his or her impairment, and alone are not enough to establish a mental impairment; signs include observable psychological abnormalities and must be medically demonstrable phenomena; laboratory findings must be shown through medically acceptable laboratory techniques. 20 C.F.R. § 416.928. The evidence cited by Plaintiff consists of a single page of Dr. Ware's brief notations of Plaintiff's reports of nightly nightmares, screams and ghosts. AR 155. Dr. Ware's records include no reference to signs, laboratory findings or medical evidence to support Plaintiff's reports.

B.     Review of Testimony

Plaintiff argues that the ALJ did not fully and fairly consider the testimony . Specifically, Plaintiff contends the ALJ failed to give adequate reasons for rejecting Plaintiff's credibility.

The ALJ is required to make specific findings assessing the credibility of Plaintiff's subjective complaints. *Ceguerra v. Sec'y of Health & Human Serv.*, 933 F.2d 735, 738 (9th Cir. 1991). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834. Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

"The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* at 958-959 (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.* at 959.

In support of her contention that the ALJ failed to provide adequate reasons for rejecting her credibility, Plaintiff inexplicably cites to the prior ALJ's February 14, 2002 credibility determination (AR 67). The prior credibility determination is not the subject of the Court's review. To the extent Plaintiff contends that the ALJ failed to make specific finding in assessing Plaintiff's credibility in his April 14, 2004 decision, this contention is unsupported.

Here, the ALJ made specific findings in assessing Plaintiff's credibility and stated that Plaintiff's complaints were unsupported by objective findings. AR 18. Although the ALJ may not discredit allegations of pain solely because the evidence does not support Plaintiff's statements, he is entitled to take the objective evidence into consideration. *Lester*, 81 F.3d at 834 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*)). After his review of the evidence, the ALJ noted the following: (1) there was no evidence in the current mental and physical assessments to support Plaintiff's claim of a severe impairment; (2) the Plaintiff's treating physician released her to work in April 1998; (3) the consultive medical examiner concluded there were no objective findings on which base restriction of Plaintiff's physical activities; and (4) the state agency psychiatrist reported no severe mental impairment. AR 18. Although Plaintiff may disagree with the ALJ's analysis of the objective evidence, it does not alter the fact that the ALJ was entitled to rely on the objective findings in analyzing Plaintiff's subjective complaints.

The ALJ also discussed Plaintiff's treatment. He explained that Plaintiff has required minimal treatment, which is inconsistent with any severe impairment. Plaintiff's treatment history was certainly a valid consideration. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (that the claimant's "pain was 'not severe enough to motivate [her] to seek [these forms of]

treatment,' even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain").

Plaintiff also contends that the ALJ should have credited, or at least discussed, the Third Party Questionnaire completed by Plaintiff's friend, as well as Plaintiff's questionnaire and the testimony of Plaintiff's daughter.  AR 41-57, 125-130, 131-136.  As to Plaintiff's questionnaire, the ALJ indirectly addressed it in his analysis of Plaintiff's credibility.  As to the questionnaire completed by the third party, Plaintiff's friend, the ALJ also indirectly addressed this issue in his analysis of Plaintiff's credibility.  The third party statement from Plaintiff's friend essentially corroborated Plaintiff's account of her pain and daily activities.  AR 125-130.  As such, the ALJ did not err by failing to discuss the third party statement explicitly.  *See, e.g., Carlson v. Shalala*, 999 F.2d 180 (7th Cir. 1993).  The ALJ should have, however, at least addressed the testimony of Plaintiff's daughter.  Lay witness testimony as to a claimant's symptoms is competent evidence that the Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  However, given the overall medical record and the ALJ's remaining credibility analysis, which was proper, the error was harmless at best.  *See, e.g., Batson*, 359 F.3d at1197 (9th Cir. 2004) (upholding ALJ's credibility determination even though one reason may have been in error).

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Peuang Bounnhong.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the

specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   June 12, 2007**                                  **/s/ John M. Dixon**
                                                          UNITED STATES MAGISTRATE JUDGE